FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT

★   JUN 13 2011   ☆

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ALENE K. ABRAMSON

                  Plaintiff/Petitioner,

  -against-

THE BOARD OF EDUCATION FOR THE NORTH
SHORE CENTRAL SCHOOL DISTRICT, EDWARD
MELNICK, as Superintendent of the North Shore
Central School District, TERRYL DONOVAN, as
Director of Music of the North Shore Central School
District, MARC FERRIS, as Principal of the
North Shore Central School District Middle School,

                 Defendant/Respondent.
-------------------------------------------------------------------X

**NO SUMMONS ISSUED**

COMPLAINT/PETITION

**CV 11 2858**

Plaintiff demands trial, as
by six (6) jurors.

Civil Action No.:

FEUERSTEIN, J

      The above named plaintiff/petitioner, hereinafter plaintiff, through her attorney, Law Offices of Edward J. Yule, P.C., complaining along with attached affidavit of Alene K. Abramson dated June 13, 2011, and all other exhibits attached here in this hybrid action of the defendants/respondents alleges as follows, upon information and belief:

<u>JURISDICTION AND PARTIES</u>

      1.     This is an action for injunctive relief, declaratory judgment, and money damages under Federal, and New York State Common Law.  The plaintiff claims are brought pursuant to 42 U.S.C. 1983 alleging violation of the plaintiff's rights to Freedom of Speech, Due Process and Equal Protection under the 1st and 14th Amendments of the United States Constitution, as well as under New York State CPLR Article 78 for an immediate declaratory judgment under New York State Education Law 3020 and 3020(a) for equitable relief, under the New York State Constitution violating plaintiff's rights of Due Process, and Common Law claims of constructive discharge and intentional and negligent infliction of emotional distress.

2.     This Court has pendent and supplemental jurisdiction over the state causes of action pursuant to Article III of the United States Constitution, 28 USC Section 1331, 1343, 1367 and 43 USC Section 2000(e)(5)(f).   The State claims contained herein are "so related" as to be part of the same controversy outlined in the federal causes of action.

3.     This action is brought on an emergency basis.  On June 6, 2011, the defendant District served 36 written disciplinary charges against the plaintiff pursuant to New York State Education Law 3020 and 3020(a).  Attached as Exhibit "7".

4.     In New York, the exclusive procedure for discipline of tenured teachers is governed by statute, Section 3020 Discipline of Teachers and Section 3020-a Disciplinary Procedures and Penalties of the New York Education Law.

5.     Under New York State Education Law discipline of teachers must be based on documents, letters, emails, observations, formal and informal, etc, contained exclusively in a tenured teacher's personnel file.  At the insistence and direction of defendant Terryl Donovan over the last three years, the defendants placed well over 100 official documents in the plaintiff's personnel file that were disciplinary in nature.

6. On or about October 12, 2010, the plaintiff requested a Due Process Hearing in order to exercise her right to challenge those documents that were placed in her personnel file.  The defendants' repeatedly and entirely denied the plaintiff's requests.

7. On October 21, 2010 defendant Donovan denied in writing the plaintiff's request for a Due Process Hearing challenging the placement of all of the disciplinary documents placed in her file.  This denial of substantive and procedural Due Process rights affects vested property rights which are now being used to terminate her employment with the defendant district as a tenured teacher (See Exhibits "5" and "6").

8. As a result of this emergency we now request that the Court expunge the plaintiff's personnel file of all disciplinary documents for failure of the defendant to provide a Due Process Hearing under New York State Education Law. These documents now serve as the basis of the disciplinary action initiated by the defendant on June 6, 2011 seeking the plaintiff's termination for insubordination (also classified by the district as incompetence in the current disciplinary charges).

9. The acts of the defendant involve a vested property right under NYS Education Law as plaintiff is a tenured teacher with the North Shore School Central District.

10. The rights, remedies and protections afforded a tenured teacher in New York State are governed by the United States Constitution, New York State Education Law, New York State Constitution and in part the Collective Bargaining Agreement.

11. The plaintiff is a member of the Federation of United Teachers, the exclusive bargaining agent for the plaintiff and other similarly situated tenured teachers who are employed by the defendant District. The Federation President is Bruce Fichtman.

12. The plaintiff has a specific proprietary interest and property right as a tenured teacher pursuant to New York State Law which requires procedural and substantive due process before disciplinary action or any penalty is imposed.

13. The District, by unilaterally imposing an indefinite penalty affecting plaintiff's right to earn a living, has violated her Due Process Rights, under the United States Constitution and therefore this Court has jurisdiction to hear and determine all issues in this matter pursuant to 28 USC Section 1331, 1343, 1367.

14. The amount in controversy exceeds ONE HUNDRED FIFTY THOUSAND ($150,000.00) DOLLARS.

15.     This action is to redress the defendants' actions under color of State Law, which affected the privileges, rights, protections, and immunities secured to the plaintiff by the United States Constitution, and under Federal Constitution, New York State Constitution, New York Education Law, and Common Law.

16.     That at all times hereinafter mentioned the defendants acted under color of State law and authority.

17.     That the defendants were served with a Notice of Claim on December 30, 2010, attached as Exhibit "3".

18.     The defendants were served with a second Notice of Claim dated April 6, 2011, attached as Exhibit "4".

## PARTIES

19.     The plaintiff, Alene Abramson, at all times pertinent to this complaint, resides at 40 Stoner Avenue, Apartment 2Y, Great Neck, New York 11021.

20.     The defendant, North Shore Central School District, hereinafter the District, is organized under the laws of New York and the Public Education Organization serving the residents of North Shore Central School District in and about Nassau County, New York. (Glen Head, Glenwood Landing, Sea Cliff, Brookville, Old Brookville, Roslyn Heights, Roslyn Harbor, Glen Cove and Greenvale)

21.     At all times hereinafter mentioned, defendant, Terryl Donovan, is the Director of Music for the North Shore Central School District, and is an administrator and one of the plaintiff's supervisors.  Ms. Donovan was hired by the District in 2002 as Director of Music and has no degree or educational background in music.

22.     At all times hereinafter mentioned, defendant Marc Ferris is the Principal of North Shore Central School District, Middle School. He is an administrator within the District and at all times herein one of the plaintiff's supervisors. Mr. Ferris has no degree or educational background in music.

23.     At all times hereinafter mentioned defendant, Edward Melnick, is the Superintendent of the North Shore Central School District.

24.     The plaintiff is a tenured teacher employed by the District since 1998. She was hired as a music teacher for elementary school band.

25.     In 2002 the District hired a new Music Director for the District, Terryl Donovan.

26.     Shortly after the hiring of Terryl Donovan, and without explanation, Ms. Donovan transferred the plaintiff from her assignment as elementary school concert band teacher to teach Middle School Grades 6-8 Music.

27.     Thereafter, plaintiff was reassigned to numerous music teaching positions without proper training, written curriculum, equipment or assistance by defendants including Terryl Donovan, the Director of Music for the District, Marc Ferris, Principal of the Middle School, or Edward Melnick.

28.     The plaintiff was assigned to teach a newly created music class for middle school students titled Vocal Music and Media Lab (hereinafter VMML) and has just been placed on administrative reassignment with pay.

29.     From 2003 to the present the plaintiff, a tenured music teacher, has been and is subjected to a course of conduct and conditions by the District, which were intentionally designed by Terryl Donovan, which imposed unreasonable requirements that no other tenured or non-tenured teacher has been required to fulfill, all in violation of the law. The intentional acts

of the District, Ms. Donovan and Mr. Ferris were specifically done in an attempt to remove plaintiff from her employment either administratively or by attempting to force her to resign.

30.     The acts from 2003 to the present of all defendants violate all bounds of decency and are in violation of New York State and Federal Law.

31.     The plaintiff was subjected to an intentional, continual course of conduct designed to prevent her freedom and right to teach general music class in compliance with New York State curriculum in a manner consistent with the 1st Amendment of the United States Constitution.

32.     From 2009 through February 14, 2011, pursuant to an unlawful clause in the CBA under Article 2 titled "Discipline of Tenured Teachers" the plaintiff was placed on Intensive Supervision Phase 1, See Exhibit "2", the Collective Bargaining Agreement, which unilaterally permits the District to require further conditions, requirements of the plaintiff without providing for a reason, without giving her an opportunity to be heard which can be used against her in a disciplinary manner in violation of the law.

33.     On February 14, 2011, Ms. Abramson was placed on Intensive Supervision Phase 2, pursuant to an unlawful contractual clause contained in the Collective Bargaining Agreement (herein CBA) between the plaintiff's union (herein the Federation) which is in effect at this time.

34.     On October 12, 2010, the plaintiff, pursuant to New York State Law and the United States Constitution, requested a due process Hearing be held to remove dozens of disciplinary memorandum and emails placed in her file by the District. The District and Terryl Donovan flatly refused that request. (See Exhibit "5 and 6").

35.     On February 14, 2011, pursuant to an unlawful clause in the CBA the plaintiff was officially placed on Intensive Supervision Phase 2.

36.     This additional disciplinary action by the District violates New York State Education Law 3020 and 3020(a)'s specific requirements, both procedurally and substantively imposed discipline which affected the terms and conditions of her employment, including but not limited to freezing her compensation that she would otherwise be entitled to pursuant to the CBA.

37.     The Defendant had no jurisdiction to impose any disciplinary actions upon the plaintiff because they failed to abide by New York State Education Law.

## STATEMENT OF THE CASE

38.     Included and made part of this petition/complaint is the affidavit of Alene K. Abramson, attached as Exhibit "1".

39.     Ms. Abramson received a Bachelor of Music in Percussion Performance from the University of Michigan in 1990. She was the recipient of class honors in 1986 and 1988. She was the recipient of the Suffolk County Music Guild – Young Artist Competition Winner in 1986. She was accepted into the prestigious Aspen Summer Music Festival in 1989.

40.     In From 1990-1992, Ms. Abramson was the recipient of both a Director's Award and a Dean's Scholarship (full tuition from 1990-1992) at Boston University. She received her Master's Degree from Boston University in 1992 and also received a Director's Award in 1990. Her GPA was 3.64 at Boston University. She became certified in Grades 5-12 as an instrumental music teacher in the State of Massachusetts and  thereafter became certified as a  K-12 music teacher in New York State.

41.     Ms. Abramson's work experience consists of Assistant Music Director Grades 3-8 at Paul Efman Music Service in 1994. From 1994 to 1995 she was the band director of Grades 4-5 at Syosset School District.  In 1995, she taught general music, Grades 1-5, Summer

recreation program at Merrick School District. From 1995 – 1998, she was a Band Director in Grades 4-6 at Sachem School District. From 1996 – 1998 she was the Band Director of Grades 3-6 at Cold Spring Harbor School District. From 1996 - 1998 she was the Band Director of Grades 4-5 at Port Washington School District. During this period of time Ms. Abramson was employed part time by both School Districts simultaneously.

42.     Her professional memberships include Music Educators National Conference, New York State School Music Association, (Certified NYSSMA adjudicator), and Nassau Music Educators Association.

43.     On June 1, 1998, the plaintiff was hired by North Shore Central School District to the probationary employment as an instrumental band teacher effective September 1, 1998 and held that position through June 30, 2001. During the period of her hire as a probationary full time teacher with the District she started her employment as **the only band teacher of all three elementary schools in North Shore Central School District**. Prior to that time there was a limited band program in each elementary school level within the District. As the sole band director of the three elementary schools in the District Ms. Abramson built up the program and established a band in each building. Dr. Melnick, in part, hired Ms. Abramson to replace two elementary band teachers from the previous year, and to rebuild the elementary band program.

44.     During that time the District had no negative reports, observations or complaints regarding the plaintiff.

45.     Pursuant to the CBA, plaintiff is entitled to annual salary and step increases which have been summarily denied by the District indefinitely.

46.     On June 30, 2001, Dr. Melnick and the District offered Ms. Abramson the status of tenured teacher.

47.     On January 9, 2004, plaintiff was assigned to teach Middle School within the District, in addition to teaching elementary school band.

48.     Ms. Abramson was then transferred as Band Director of the elementary schools in the 2004 school year to direct the Middle School 7th and 8th Grade Concert Bands.

49.     In December, 2004, Ms. Abramson was assigned by Ms. Donovan to be the first music teacher to be responsible for coordinating the concert print program production of the Middle School in the District's history.

50.     On December 6 and December 9, 2004, the plaintiff conducted two highly successful band concerts with her seventh and eighth grade students.

51.     On January 5, 2004, the plaintiff was assigned to add teach two 8th Grade general music classes in addition to teaching elementary band, without having any prior experience in this field and without any guidance, curriculum, lesson plan assistance, tools and having no prior experience teaching this course.  From April-May, 2005, Ms. Abramson as Band Director for Grades 7 and 8, organized, directed, and conducted her students as they performed in three School District Parades.

52.     At the conclusion of the 2004-2005 school year, Ms. Abramson was reassigned again to teach Middle School Instrumental Music and Elementary General Music.   Ms. Abramson had no prior experience teaching elementary general music  but was assigned to do so at the direction of the Music Director, Terryl Donovan.

53.     The plaintiff was unilaterally removed as Band Instructor and at the direction of Terryl Donovan was required to teach general music, despite having no guidance, prior experience or the proper tools and materials needed to do so, despite repeated requests for assistance.

54. On January 8, 2009, pursuant to the unlawful Collective Bargaining Agreement under Article 2 to a disciplinary action of Intensive Supervision Level 1. From January, 2009 through the conclusion of the school year in June of 2009, Ms. Abramson was required to perform tasks and assigned duties that no other teacher had ever been required to do, including but not limited to, being subjected to more frequent classroom observations by a variety of administrators several times per week every week throughout the year and from 2009-2010 being the only elementary teacher in the district to ever be assigned to work as a lunch monitor.

55. At the same time the District had assigned a teacher with background in music technology to develop and teach a course known as Vocal Music Media Lab. This is the same course that Ms. Abramson was assigned to teach despite having no training, experience, materials or guidance.

56. From June 2009 through February 2011 Ms. Abramson was subjected to intolerable treatment, unrealistic requirements and demands that had never been imposed on any other teacher, no one required by the New York State Education Curriculum Requirements for Grades 6-8. Despite requesting assistance, help, guidance, materials and direction, the District flatly refused. Rather, they embarked on a periodic continual course of conduct to criticize and misdirect the plaintiff and inflict emotional distress. These actions isolated plaintiff from her colleagues and, in fact, the defendants encouraged plaintiff's colleagues to watch her and report back to the defendants on what she was doing.

57. On February 14, 2011, the defendants officially placed plaintiff on Phase 2, Intensive Supervision, pursuant to Article 2 of the Collective Bargaining Agreement.

58. The Collective Bargaining Agreement (attached hereto as Exhibit "2") permits and allows the District at its own choosing, without any input from the Union or the teacher, who

they subjectively believe is not performing up to their standard to be placed on Intensive Supervision. Intensive Supervision contract language is as follows:

## ARTICLE II – APPOINTMENT, PROBATION, TENURE AND ABOLISHMENT OF POSITIONS

A.    Evaluation of Probationary Teachers

1. A probationary teacher shall be notified on or before April 15th whether he/she will be reappointed for the following school year. If April 15th falls during a school vacation period, the probationary teacher shall be notified by the last school day preceding the vacation.

2. In addition to any informal observations, a probationary teacher shall be formally observed in the classroom at least three (3) times each year prior to April 15th. A formal classroom observation is one where the observer makes a written report of the observation, including recommendations.

3. At the request of either the observer or the teacher, a conference shall take place within fifteen (15) school days after the formal observation. The observer will offer verbal impressions of the observation and the teacher will have an opportunity to discuss and react to those impressions. The observer's notes of the observation shall be made known to the teacher and said notes shall be used as the basis for the conference.

4. A copy o the report shall be given to the teacher and placed in the teacher's personnel file within fifteen (15) school days after the observation is made. Upon his/her examination, the teacher shall be required to affix his/her signature to the observation or evaluation, which shall indicate only that he/she has examined it without any inference to be drawn from his/her signing. The report may refer to the classroom observation, discussions, or any other informal observations since the last formal observation.

5. An annual written evaluation of the teacher's service shall be made by the principal of the teacher's school.

6. The teacher shall have fifteen (15) school days from receipt of the observation and evaluation reports to prepare a written response, which shall also be placed in the file, affixed to the report.

7. In the case of any particular teacher, if the District should not comply with the various fifteen (15) school day requirements set forth in this Section, the remedy shall not on the first such occasion include removal of the observation or evaluation from the file unless the District is more than thirty (30) days late on such occasion.

B.    Evaluation of Tenured Teachers

1.  All provisions of Section A, except paragraphs 1 and 2, shall also apply to tenured teachers.

2.  In addition to any informal observations a tenured teacher shall be formally observed in the classroom at least once each year prior to may 30th.  A formal classroom observation is one where the observer makes a written report of the observation, including recommendations.

3.  Matters of a disciplinary nature noted by school district personnel and included in an evaluation report which are not referable to an observation of the teacher's performance shall be based upon author-identified writing, copies of which shall be provided to the teacher within fifteen (15) school days of the events referred to in the writings.  Evaluation reports may include results of observations provided that a written report of the observation by the observer was made and provided the District complied with Section A, paragraphs 3-7.

C.      Intensive Supervision for Tenured Teachers

1.      Phase 1.  When a supervisor in the Middle School or High School or the principal of an Elementary School, has notified a teacher that there is a serious concern with regard to that teacher's performance, and that concern has been expressed in at least 1 one prior observation or evaluation of that teacher, the District may thereafter place that teacher under Phase 1 intensive supervision.  The President of the Federation shall be informed when any teacher is to be placed under Phase 1 intensive supervision.  Any teacher placed on intensive supervision shall be notified in writing.

2.      Phase 2.

(a)   If the District determines that a teacher's performance remains inadequate after no less than one school year of Phase 1 intensive supervision (or its equivalent), the District may place the teacher under Phase 2 intensive supervision, subject to the following conditions:

(i)   A meeting must occur among the teacher's immediate supervisor, the Assistant Superintendent for Instruction, the teacher, and a Federation representative, if requested by the teacher.

(ii)   The meeting must be followed by a written notice to the teacher at least ninety days prior to the commencement of Phase 2 intensive supervision, indicating the District's intention to place him or her under Phase 2 intensive supervision.

(b)   For any teacher placed under Phase 2 intensive supervision, the District shall provide:

(i)      recommendations to assist the teacher in remedying performance problems; and

(ii) the opportunity to meet no less than once per academic quarter with the teacher's immediate supervisor, the Assistant Superintendent for Instruction, and a Federation representative, if requested by the teacher.

(c) During Phase 2 intensive supervision, the teacher shall:

(i) remain at the level of compensation on the step and column of the salary schedule applicable to him or her at the time Phase 2 intensive supervision commenced; and

(ii) have the opportunity to meet no later than thirty days prior to the end of the Phase 2 intensive supervision period with the teacher's immediate supervisor, the Assistant Superintendent for Instruction, and a Federation representative, if requested by the teacher, to discuss the District's determination about whether Phase 2 intensive supervision should continue for another school year (or its equivalent).

(d) At the end of Phase 2 intensive supervision:

(i) a teacher who was not on a top step at the time Phase 2 intensive supervision commenced shall move to the salary schedule step next above the step on which he or she was placed when his or her salary was frozen, on the July 1 next following the cessation of Phase 2 intensive supervision.

(ii) a teacher who was on a top step on the salary schedule shall be entitled to any increase negotiated in the value of that step that takes effect on the July 1 next following the cessation of Phase 2 intensive supervision.

59.  By placing Ms. Abramson on Phase 2 they have imposed a disciplinary action of freezing her compensation. This disciplinary action was done without an opportunity to be heard or being served with written charges pursuant to the Requirements of 3020(a) New York State Education Law. The District failed to adhere to the State Education Law 3020 and 3020(a).

60.  The defendant failed to provide substantive and procedural due process as required under the 14th Amendment when they took away a vested property right.

61.  The effect of the "District's Phase 2 Intensive Supervision" denies due process a tenured teacher and effects the terms and conditions of her employment. The act of freezing her compensation at her current step for an indefinite period was without an opportunity to be heard.

This unilateral decision by the District with no basis of fact and was intentionally done by defendant to harm the plaintiff.

62.     From 2003 to the present time, the District has singled out the plaintiff and treated her differently.  These intentional actions adversely affected plaintiff's employment.  Upon information and belief, no other tenured teacher or otherwise within the district has ever been on Phase 2, Disciplinary Action.

63.     This unlawful clause in the Collective Bargaining Agreement has never been judicially reviewed by any Court.  The District has unilaterally chosen to make an example out of the plaintiff by instituting conditions, requirements and reprimands while denying her the opportunity to be heard.

64.     The District's acts were intentionally designed to circumvent New York State Education Law's procedural safeguards as the exclusive procedure for disciplining of tenured teachers.  The acts of the defendants have and will continue to have a chilling effect on all other tenured teachers in the District.    The acts of the defendants are the proximate cause to the irreparable harm to the plaintiff's reputation, good name and qualifications as a tenured teacher in the field of music in New York State.

65.     In the fall of 2010 plaintiff requested a Due Process Hearing in order to challenge the letters and memos placed in her file. She was flatly denied that right. See plaintiff's Memo dated October 12, 2010 (Attached as Exhibit "5 and 6").

66.     Because of the defendants' intentional acts, the plaintiff's status is irreparably harmed.  Plaintiff is currently under a doctor's care for emotional distress.

67.     The threat of injury to the plaintiff is clearly outweighed by any harm to the defendants, which justifies staying the 3020(a) disciplinary hearing until these issues are

determined. The District failed to serve the plaintiff with written charges to itemize and specify exactly what she did wrong prior to imposing disciplinary action.

68.     The defendants' disciplinary action is frivolous and violates the plaintiff's rights under the 14th Amendment, 1st Amendment, State Education Law 3020, 3020(a), New York State Education Law, New York State Constitution and Common Law.

69.     As a result of the defendant's illegal and unconstitutional actions the plaintiff has been denied due process or been given the opportunity to challenge whatever it is the District claims she did wrong in order to justify the District taking away her property rights and proprietary interest in her status as a tenured teacher in good standing, as well as her right to receive compensation.

70.     Plaintiff will prevail on the merits under due process, has no adequate remedy at law and will suffer irreparable harm to her reputation that cannot be repaired with money.

71.     All administrative remedies have been exhausted and the issue is now ripe for Court action.

## FIRST COUNT

72. This proceeding is brought pursuant to CPLR Article 78, Action of the Public Board, acting under color of State that the placement of plaintiff on Supervision Phase 2 under Article 2 Section C Intensive Supervision for Tenured Teachers, in that it is unlawful and violates the petitioner's rights under New York State Education Law 3020 and 3020(a), the US Constitution and the New York State Constitution, is a disciplinary action which materially affects the compensation of the petitioner affording the opportunity for due process for the reasons stated in the following paragraphs.

73. All the preceding paragraphs are realleged and incorporated in this first count.

74.   The respondent Board's determinations placing the petitioner on Phase 2, Intensive Supervision and freezing her level of compensation, contrary to her rights as a member of the Federation in good standing, is a disciplinary action.  Respondent imposed the disciplinary action of Intensive Supervision, Phase 2 which clearly affected the terms and conditions of her employment by prohibiting her entitlement to in increased compensation without due process.

75.   The unilateral act by the respondents in imposing discipline by freezing her compensation violates New York State Education Law 3020 and 3020(a).   Therefore the respondents' determination was made without jurisdiction and outside its scope of authority:

a)   Notice sent to petitioner informing her that she would be placed on Intensive Supervision Phase 2 as of February 14, 2011 violates New York State Education Law under Section 3020 by failing to proffer written charges upon the petitioner outlining the purported misconduct or insubordination allowing her to a due process hearing before any disciplinary a action can be imposed.

b)   Placing disciplinary emails, documents, informal observations and formal observations in petitioner's personnel file are disciplinary actions from the period of November, 2010 through February 14, 2011.

c) The failure of the respondent to provide the petitioner with the opportunity to be heard in a "due process hearing" precludes the district's use of these disciplinary documents in any disciplinary action instituted by the respondents.

d)   The Board failed to serve the petitioner with written charges outlining any wrongdoing as required by law prior to placing plaintiff on Phase 1 and Phase 2.

e)   The respondents failed to conduct a due process hearing to petitioner prior to imposing disciplinary action as required by law.

f)    Additional procedure and substantive irregularities rendered the respondents' determination and action of placing the petitioner on Phase 2, Intensive Supervision, void and null, entitling the petitioner to an annulment of the determination and as such must expunge all documents, emails, letters, formal and informal observations from June, 2008 to the present time, which were used as the basis of imposing disciplinary action which affected the terms and conditions of her employment.

## SECOND COUNT

76.    All the preceding paragraphs are hereby realleged and incorporated in this second count.

77.    The respondents' determination was made in violation of lawful procedure for the reasons stated.

a)    Despite the expressed provisions of Education Law 3020 and 3020(a) petitioner was not notified in writing that the Board was placing her on disciplinary action, which served as the basis of the decision to place the petitioner on Intensive Supervision Phase 2, and that the petitioner was the potential subject of a disciplinary hearing or had the right to request a hearing before an impartial hearing officer and had the right to review the materials, documents and emails that served as the basis that was the potential subject of a disciplinary hearing.

b)    Despite the provisions of Education Law 3020 and Civil Service Law Section 75 requiring the same, the respondent did not provide the petitioner with a reasonable time to obtain representation, whether from the Federation or private counsel, in connection with such requested information regarding any potential disciplinary action prior to the imposition of discipline.

c)  Despite the provisions of Civil Service Law Section 75 requiring the same, the respondents did not provide the petitioner with written notice of their proposed disciplinary action and did not furnish her with a copy of any charges leveled against her and did not allow the petitioner at least eight days for answering the same in writing.

d)  Despite the provisions of Civil Service Law Section 75 requiring the same, the respondents did not commence disciplinary proceedings against the petitioner serving written notice of the charges and allowing sufficient time to obtain representation and to prepare for same.  The respondent imposed disciplinary action prior to the appointment of a hearing officer or notice to the New York State Education Department in violation of the law.  The petitioner was denied the opportunity under basic due process to review the written charges, to prepare a defense including but not limited to fully cross-examine key respondent witnesses regarding their subjective, written documentation that served as the basis for the imposition of discipline without due process.  As a result of the aforementioned procedural defects the petitioner is entitled to an annulment of this determination of her placement under Phase 2, Intensive Supervision, which affected the terms and conditions of her employment for an indefinite period.  Emails and documents relied upon for the respondents' determination must be precluded from further use in any future disciplinary action.

### THIRD COUNT

78.  All the preceding paragraphs are hereby realleged and incorporated in this third count.

79.  That Article 2, Section (c) Intensive Supervision for Tenured Teachers, Phase 1, must be annulled and ruled void as unconstitutional in that it directly contradicts New York State Constitution and New York State Education Law 3020 and 3020(a) and violates due process in

that it imposes a disciplinary action without due process and as such must be annulled and voided as unconstitutional.

## FOURTH COUNT

80.     All the preceding paragraphs are hereby realleged and incorporated in this fourth count.

81.     That Article 2, Section (c) Intensive Supervision for Tenured Teachers, Phase 2, must be annulled and ruled void as unconstitutional in that it directly contradicts New York State Constitution and New York State Education Law 3020 and 3020(a) and violates due process in that it imposes a disciplinary action without due process and as such must be annulled and voided as unconstitutional.

## FIFTH COUNT

82.     All the preceding paragraphs are hereby realleged and incorporated in this fifth count.

83.     The defendants' placing of the petitioner on intensive supervision for tenured teachers under Article 2, Section (c) Intensive Supervision for Tenured Teachers Phase 1 and Phase 2 of the CBA is unlawful and unconstitutional.

84.     The defendant's intentionally acted arbitrarily and capriciously toward the plaintiff made determinations affecting the terms and conditions of the petitioner's employment which constituted an abuse of discretion under New York State Constitution, United States Constitution, New York State Education Law, New York State Civil Service Law and Common Law.

85.    As a result the petitioner is entitled to an annulment of the determination and placement on Phase 1 and Phase 2 and expungement of all documents in her personnel file that were used to impose discipline on the petitioner.

## SIXTH COUNT

86.    All the preceding paragraphs are hereby realleged and incorporated in this sixth count.

87.    The respondents' determination that the plaintiff was at any time insubordinate is not supported by the evidenced including;

a)    There is no credible evidence to support the finding that the petitioner engaged in any intentional misconduct or insubordination as required under New York State Education Law and New York State Civil Service Law.

b)    There is no evidence to support the finding that the petitioner was incompetent.

c)    There was no hearing before an impartial hearing officer that would justify the imposition of discipline that affected the compensation as terms and conditions of her employment.

d)    As a result the disciplinary charges contained in Exhibit "13" must be annulled due to the fact that it violates the due process clause of the United States Constitution and 42 U.S.C. 1983

## SEVENTH COUNT

88.    All the preceding paragraphs are hereby realleged and incorporated in this seventh count.

89.    The respondents' intentional acts violated the petitioner's right to due process prior to the imposition of any discipline under the United States Constitution in the following manner.

a)    Pursuant to State Education Law Sections 3020 and 3020(a) petitioner is not to be removed or disciplined from her employment position except for insubordination or misconduct which is a right protected by the due process guarantees of the 14th Amendment of the United States Constitution.

b) The respondents in bringing the disciplinary proceeding against the petitioner and then imposing disciplinary action were acting under color of State and Federal Law.

c) As a result, the plaintiff was denied "equal protection" under the law.

d)    As a result of defendants' acts, and in no part by plaintiff, the plaintiff has suffered money damages, damage to her reputation and her good name as a licensed music teacher in New York.

## EIGHTH COUNT

90.    All the preceding paragraphs are hereby repeated and incorporate in this eighth count.

91.    At all times herein the defendants' conduct was intentional and outrageous towards the plaintiff.

92.    The intentional acts and conduct of the defendants with increasing frequency and duration were beyond all bounds of decency, were willfully, wantonly and recklessly directed towards the plaintiff to cause her harm.

93.    The conduct of the defendants' was the proximate cause of the plaintiff's distress.

94.     The plaintiff suffered and continues to suffer severe emotional distress as a result of the reckless, intentional, and outrageous conduct of the defendants.

95.     The defendant knew that the plaintiff would be particularly harmed by this conduct and it was foreseeable that the intentional, outrageous conduct would cause distress to the plaintiff.

96.     As a result of the above the plaintiff has been damages, through no fault of her own in the amount of five million dollars ($ 5,000,000.00).

## NINTH COUNT

97.     All the preceding paragraphs are hereby repeated and incorporate in this ninth count.

98.     At all times herein the defendants' outrageous conduct was negligent and reckless.

99.     The negligent acts and outrageous conduct of the defendants towards the plaintiff increased in frequency and were beyond all bounds of decency in a civilized society.

100.    The negligent conduct of the defendants' was the proximate cause of the plaintiff's distress.

101.    The plaintiff suffered and continues to suffer severe emotional distress as a result of the negligent and reckless outrageous conduct of the defendants.

102.    As a result of the above the plaintiff, through no fault of her own, has been damages, through no fault of her own in the amount of five million dollars ($ 5,000,000.00).

WHEREFORE, the plaintiff demands judgment against the defendant as follows:

1 – An Order staying the pending disciplinary action that was  initiated by the District on June 6, 2011, until the legal issues in this Petition/Complaint are judicially determined; is action is determined on the requested Order to Show Cause,

2 – An Order  restraining the defendants, their agents, employees and all persons in active concert and/or participation from its continued classification of the petitioner as a tenured teacher subjected to Intensive Supervisions Phase 2;

2 – A Declaratory Judgment determining that Article 2 of the Collective Bargaining Agreement is unlawful and unconstitutional;

3 – A permanent injunction ordering the defendants to expunge and remove from the plaintiff's personnel file all documents, letters, emails, formal observations, informal observations etc. which were used for the basis of the current disciplinary action against the plaintiff and the placement of the plaintiff on Phase 1 of the Collective Bargaining Agreement Disciplinary Action and Intensive Supervision Phase 2, and prevent them from being used in any way.

4 - A Judgment declaring the defendants have acted illegally and unconstitutionally and in a capricious and arbitrary manner in supervising and directing the plaintiff.

5 – Money Damages.

6 – Punitive Damages.

7 – Attorney's fees.

8 – Interest.

9 – Costs.

10- Such other relief as this Court may deem just and proper.

Dated:  Northport, New York
        June 13, 2011

Yours, etc.,

LAW OFFICES OF EDWARD J. YULE, P.C.
Attorney for Petitioner

By:_____
      EDWARD J. YULE
      46 Woodbine Avenue
      Northport, New York  11768
      (631) 754-8500

## VERIFICATION

STATE OF NEW YORK)
                              ss.:
COUNTY OF SUFFOLK)

I, Alene K. Abramson, being duly sworn, deposes and says:

I am an the plaintiff in the within action

I have read the foregoing Petition/Complaint and know the contents thereof; that the same is true to deponent's own knowledge, except to those matters therein stated to be alleged upon information and belief, and those matters, your deponent believes to be true.

_Alene K. Abramson_

Sworn to before me this
13th   day of June, 2011

BONNIE HESLIN
Notary Public, State of New York
NO. 01HE4665759
Qualified in Suffolk County
Commission Expires May 31, 2014